UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VERNITA WORRELL,

                    Plaintiff,                Case No. 16CV1038

      -against-                          COMPLAINT

CROISSANT CONSORTIUM LIMITED d/b/a THE
HUNGARIAN PASTRY SHOP and TITAN WEST
ASSOCIATES,

                    Defendants.

---

Plaintiff, VERNITA WORRELL (hereinafter "Plaintiff"), through her undersigned counsel, hereby files this Complaint and alleges, as follows:

## INTRODUCTION

1.      This is a civil action to redress discrimination on the basis of disability in violation of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12181 et seq. ("ADA"), and its implementing regulation, 28 C.P.R. Part 36.  Plaintiff also sets forth claims for unlawful discrimination under the New York State Executive Law (the "Executive Law") § 296, New York State Civil Rights Law, § 40, and the Administrative Code of the City New York (the "Administrative Code"), § 8-107.

2.      On July 26, 1990, Congress enacted the ADA, 42 U.S.C. § 12101 et seq., the most important civil rights law for persons with disabilities in our country's  history.

3.      The Congressional statutory findings include:

(a)      Some 49,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(b)      Historically, society has isolated and segregated individuals with disabilities, and, despite  some  improvements,  such  forms  of  discrimination  against  individuals

with disabilities continue to be a serious and pervasive social problem;

(c)    Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communications, recreation, institutionalization, health services, voting, and access to public services.

(d)    Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.

(e)    The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society justifiably is famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity. 42 U.S.C. § 12101 (a)(1)-(3), (5) and (9).

4.    Congress explicitly stated that the purpose of the ADA was:

(a)    To provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(b)    To provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(c)    To invoke the sweep of Congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the

major areas of discrimination   faced day-to-day   by people with disabilities 42 U.S.C. §
12101 (b)(1)(2)  and (4).

      5.      Congress provided commercial businesses 1 1/2 years to implement the
requirements imposed  by the ADA.   The effective date for ADA Title III {ADA § 12181 et
seq.), was January 26, 1992.

## PARTIES

      6.      The Plaintiff contracted polio as a child and has used a wheelchair for mobility
all of her life.   Plaintiff therefore has a disability within the meaning of the ADA. 42 U.S.C. §
12102(2)(A).  Plaintiff also has a physical disability within the meaning of the laws of the State
of New York.

      7.      Defendant CROISSANT CONSORTIUM LIMITED d/b/a THE
HUNGARIAN PASTRY SHOP (the "Bakery") operates an establishment selling baked goods,
desserts and beverages located at 1030 Amsterdam Avenue, New York, New York.   The
Bakery is a "place of public accommodation" within the meaning of Title III of the ADA
because its operations affect commerce and, among other things, it is "a restaurant, bar or other
establishment serving food or drink." 42 U.S.C. § 12181(7)(B); see 28 C.F.R. § 36.104.

      8.      Defendant TITAN WEST ASSOCIATES (the "Landlord") leases the building in
which the Bakery is located and is therefore a necessary party pursuant to Federal Rule of Civil
Procedure 19 for purposes of equitable relief.   The Bakery and the Landlord are hereinafter
collectively referred to as "Defendants".

## JURISDICTION and VENUE

      9.      This Court has jurisdiction over the ADA claims pursuant to 28 U.S.C. §§ 1331
and 1343, and pursuant to 28 U.S.C. § 1367(a), and  the Court has supplemental jurisdiction over
Plaintiff's claims brought under the laws of the State of New York.

10.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b).  The acts of discrimination alleged in this complaint occurred in this District, and the public accommodation which is the subject of this action is situated in this District.

## STATEMENT OF FACTS

11.     Defendants are required to remove architectural barriers to the physically disabled when such removal is readily achievable for a place of public accommodation that has existed prior to January 26, 1992, 28 CFR § 36.304(a). In the alternative, if there has been an alteration to Defendants' place of public accommodation since January 26,1992, then the Defendants are required to ensure, to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally if the Defendants' facility is one which was designed and constructed for first occupancy subsequent to January 26,1993 as defined in 28 CFR 36.401 then the Defendants' facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

12.     Plaintiff lives in the neighborhood where the Bakery is located and has been told that the Bakery sells delicious drinks and treats, which she is anxious to try for herself. Unfortunately, as a result of the barriers to her entry, she is compelled to sit on the sidewalk and watch while non-disabled patrons enter the Bakery and enjoy the desserts and beverages being served.  Plaintiff last attempted to gain entry to the property which forms the basis of this lawsuit on or about November 11, 2015.

13.     Defendants have discriminated against the Plaintiff by denying her access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and or accommodations of its place of public accommodation or commercial facility, in violation of 42 U.S.C. 12181, et seq., and 28 CFR 36.302, et seq., as described below.

4

14.     The Bakery is located on Amsterdam Avenue between West 110 and West 111th Streets. The initial barrier is readily apparent. The sidewalk in front of Bakery has two levels. There is the NYC sidewalk and then, in addition, running along the front of the Bakery, and continuing along to the end of the building line, there is an additional sloped concrete slab which is approximately 4". The 4" high raised cement runs in front of the entrance.

A more complete detailing of the barriers encountered at the Bakery is set forth below. Photographs depicting some of the discriminatory barriers are annexed hereto as Exhibit A, made a part hereof and incorporated by reference herein.

15.     Records of the NYC Department of Buildings indicate that substantial alterations have taken place at the Bakery since the enactment of the ADA, the precise scope and nature being currently unknown.

16.     The following barriers and violations of the 2010 ADA Standards for Accessible Design (the "Standards"; unless otherwise stated, all statutes set forth below refer to the Standards) were noted during an investigation of the Bakery, all of which were discussed with, and reviewed by, Plaintiff prior to the filing of the Complaint:

The sidewalk in front of the Bakery has two levels. There is a 1 inch to four inch raised area, approximately 38 - 40" wide, that runs across the entire storefront. The rise lowers in height across the storefront, but is still over 1" at the end near the entrance. The only entry door has a 4" rise in front of it. The door is located about 30" from the far right end of the storefront. There is a cellar door at the far right of the store front, on that raised level. Between the cellar door and the entry door, there is crooked cement with an additional rise which would further complicate Plaintiff's entry. During nice weather, there are multiple peg leg tables and removable chairs set out in front of the Bakery. The tables and chairs are placed on both the raised section of the sidewalk and on the City sidewalk. There is a step down to the left of the

door, into this seating area, that is not ramped, and it is marked with yellow paint to stand out. There are no obstructions to the left of the door on the sidewalk that would prevent ramping, other than the outside tables that are not out year round.  There are no signs directing the disabled to any accessible entrance, elsewhere.

The entry door is at least 32" and pulls open outward from the restaurant to the sidewalk. The door has a pull handle that would be easily opened by Plaintiff if she were able to gain entry. The door sits on an angle within the storefront.  The door is recessed on an angle of approximately 12" on the left and flush with storefront on the right, creating a pathway which requires persons entering to navigate the uneven cement.

The following violations were present at the entrance:

a) The raised landing in front of the door creates rises within the maneuvering clearance, which Plaintiff cannot navigate in her wheelchair, and prevents Plaintiff from moving from the sidewalk into the Bakery (201.1, 206.2.1, 206.4, 402, 404.2.4.1, 404.2.4.4).

b) There is no route from the sidewalk to an entrance which will allow Plaintiffs entry into the Bakery, in violation of 206.2.1.

c) Due to Defendants' failure to ramp the rise over ½ inch from the city sidewalk to the raised area in front of the door (303.4, 403.4, 405), there is no accessible route, capable of navigation by a person in a wheelchair (206.4, 402.1 and 402.2).

d) Even if Plaintiff used her manual chair and someone lifted her inside, she would be left in jeopardy in the event of an emergency, since the Defendants have failed to provide an accessible means of egress. (207).

On entry, there is a sales/take out counter to the left.  The sales/take out counter exceeds the permissible 40" height, but allows a parallel approach for Plaintiff in her chair.  At the end of

6

the counter there is a self-serve tea and coffee area that is also more than 40" in height.  Due to the height, Plaintiff could not make her purchases and handle her business without assistance.

To the right of the entrance there is a table with booth seating.  Beyond the sales counter, there are free standing chairs that pull up to 2 person peg leg tables throughout the establishment. It does not appear that the aisle beyond the sales counter is wide enough to allow the Plaintiff the required space so that she could maneuver to a table.  There are no ADA compliant tables.  The peg leg tables will not allow Plaintiff the ability to pull up and below the table in her chair as they lack the required space for knee and toe clearance.  Plaintiff could not enjoy the same experience of enjoying her food inside, at a table she can pull beneath, that is offered to able bodied patrons in this establishment.

The following violations were found inside the Bakery:

e)  There are no accessible tables which allow space for Plaintiff to comfortably sit in her wheelchair, beneath a table (306, 306.1, 306.2, 306.3).

f)  206.2.5 requires that an accessible route be provided to all dining areas (see advisory 206.2.5 and advisory 902).

g)  226.1 requires 5% of the total seating to be accessible and dispersed throughout (226.2). No accessible seating within the entire dining area violates this requirement.

h)  By leaving the step at the door, the Defendants have failed to comply with 202.4, which requires alterations within primary function areas to ensure the path of travel to the altered area(s) is accessible, to the maximum extent feasible.

i)  There is no signage directing the Plaintiff to the nearest accessible entrance, as required by 216.6.

There is one small unisex bathroom available to the public.  It is located in the back half of the dining area on the left side.  Due to the arrangement of tables and chairs, this bathroom

does not have an accessible route for any individual in a wheelchair.  All routes between the tables are under 36 inches wide.

The toilet room has a small 23" door, much smaller than the required 32" opening.  The door pushes in, and is located right in the middle of the wall, rather than to one side or the other, which further obstructs the available floor space. The door has a round turn handle that Plaintiff may not be able to grasp due to limited hand mobility.  The lock on this door is out of reach for Plaintiff in her chair, and the slide and lock is not easily manipulated.  The entry of the bathroom does not allow an individual the required maneuvering area to open and close the door on their own.

The bathroom sink is located on the back wall.   The sink is at an acceptable height, however, the pedestal style does not allow Plaintiff the necessary knee and toe clearance to pull up to the sink and wash her hands.

The toilet sits next to the sink.  The centerline of the toilet to the wall is 13".  There are no grab bars present on the wall side of the toilet or the back wall.  There are only 22" in front of the toilet to the wall, but a corner cabinet sits in this space.  This corner cabinet is used as a toilet paper dispenser.  This way of dispensing toilet paper puts the paper approximately 20" away, out of reach for an individual such as the plaintiff.

The height of paper towel dispenser and soap dispenser appear to exceed the allotted reach for the Plaintiff to reach from her chair.  The bottom edge of the reflective glass of the mirror is over 40 inches, too high for the Plaintiff to view herself as other patrons do.

The toilet room presents the following violations:

j)  Due to the configuration and the inward swinging door, the required turning space is not present, to allow Plaintiff to turn and close the door (304, 603.2.1, 603.2.3).

8

k)  There is no toilet facility complying with 213.1 or 213.2, due to the lack of accessible features (as detailed below).

l)  The mirrors on the back wall exceed the required maximum height of 40" (603.3 and 213.3.5).

m)  There is no space in front of the sink or toilet for Plaintiff to sit in her chair, due to the lack of the required clearances (604.3, 604.3.1, 213.3.4, 213.3.2, 606.2, 606.).

n)  No grab bars are present on either side of the toilet which would allow Plaintiff to use to transfer to the toilet (604.5, 604.5.1, 604.5.2).

o)  The toilet paper dispenser is far from the toilet, exceeding the 9" maximum allowed, so Plaintiff would not be able to reach it (604.7)

p)  The paper towels are hung at a height exceeding the 48" maximum height, which is necessary for use by a person using a wheelchair (309).

q)  The door hardware is unusable by the Plaintiff because the door knob is not a type easily grasped and which does not require twisting or turning of the wrist; the door lock is also difficult to grasp and too high to reach (404.2.7).

r)  The door is too narrow to allow a person in a wheelchair to pass thru it, in violation of 404.

17.  Further investigation may be required in order to determine other barriers which may exist.

18.  Once the barriers to entry and use are removed, Plaintiff looks forward to enjoying the desserts and beverages offered by, and the facilities of, the Bakery provided to the non-disabled.

19.  The Bakery fails to provide a means by which people in wheelchairs can

be afforded equal benefit of its services, in violation of 42 USC § 12182(b)(ii), which provides:

"It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

20.     There is no way for Plaintiff, for example, to enjoy a treat (assuming she were able to gain entry to the Bakery) as she could not sit comfortably at any table, as a non-disabled individual is able to, or to use the toilet room.  Therefore, the violation of the foregoing statutory provisions would prevent Plaintiff from enjoying the facilities of the bakery in the same manner a non-disabled patron may enjoy them.

## FIRST CLAIM FOR RELIEF
(Americans with Disabilities Act)

21.     Plaintiff realleges and incorporates by reference all of the allegations set forth in this Complaint as if fully set forth herein.

22.     Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

23.     Defendants have discriminated against Plaintiff on the basis of disability. Defendants' discriminatory conduct includes but is not limited to:

a.     Discriminatory exclusion and/or denial of goods, services, facilities, privileges, advantages, accommodations, and/or opportunities;

b.     Provision goods, services, facilities, privileges, advantages, and/or accommodations that are not equal to those afforded non-disabled individuals;

c.      Failing to make reasonable modifications in policies, practices, and/or procedures as necessary to afford the goods, services, facilities, privileges, advantages, and/or accommodations of the subject property to individuals with disabilities;

d.      Failing to design and/or construct the subject property so that it is readily accessible to and usable by individuals with disabilities;

e.      Failing to remove barriers to individuals with disabilities where it would be readily achievable to do so.

24.      Defendants could have removed some of the illegal barriers at the Bakery by  i) removing the raised cement or ramping, with railings, the rises at the entrance; ii) purchasing ADA complaint tables; and iii) providing an ADA compliant toilet facility.

25.      In the alternative, Defendants have violated the ADA by failing to provide Plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305.

26.      Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12188(b)(l)(B)(i), (b)(2)(A)(iv), and 28 C.

27.      Defendants have and continue to discriminate against Plaintiff in violation of the ADA by maintaining and/or creating an inaccessible place of public accommodation.

28.      Defendants' violations of the ADA have harmed, and will continue to harm, Plaintiff in the future.

## SECOND CLAIM FOR RELIEF
(Violation of the Executive Law)

29.      Plaintiff realleges and incorporates by this reference all allegations set forth in this Complaint as if fully set forth herein.

30.     The Defendants have, and continue, to subject Plaintiff to disparate treatment by denying Plaintiff equal opportunity to use their place of public accommodation all because she is disabled.

35.     By failing to comply with the law in effect for decades, the Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome and not desired as patrons of their place of public accommodation.

36.     The Defendants have discriminated against Plaintiff in violation of Executive Law § 296(2), by maintaining and/or creating an inaccessible place of public accommodation.

37.     The Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law § 296(2)(c)(iii).

38.     It would not impose an undue hardship or undue burden on the Defendants to make their place of public accommodation fully accessible.

39.     As a direct and proximate result of the Defendants' unlawful discrimination, in violation of the Executive Law, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

40.     Plaintiff has suffered damages in the amount of at least $2,000.00 (TWO THOUSAND DOLLARS) and the total amount shall be determined at trial.

### THIRD CLAIM FOR RELIEF
(Violation of the Administrative Code)

41.     Plaintiff realleges and incorporates by this reference all allegations set forth in this Complaint as if fully set forth herein.

42.     The Defendants have, and continue, to subject Plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation, all because of disability, in violation of Administrative Code § 8-107(4).

43.     The Defendants have discriminated against Plaintiff in violation of Administrative Code § 8-107(4), and Local Law 58 by maintaining and/or creating an inaccessible place of public accommodation.

44.     The Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), also known as Local Law 58, clarified the scope of the Administrative Code in relation to the New York City's Human Rights Law. The Restoration Act confirmed the legislative intent to abolish "parallelism" between the Administrative Code and the Federal and New York State anti-discrimination laws by stating as follows:

> The provisions of this title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed.

Restoration Act§ 7 amending Administrative Code §8-130.

45.     The Administrative Code is to be construed broadly in favor of Plaintiff to the fullest extent possible. Albunio v. City of New York, 2011 NY Slip Op 02480 (N.Y. Court of Appeals, March 31, 2011).

46.     As a direct and proximate result of the Defendants' unlawful discrimination, in violation of Administrative Code, Plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, stress, embarrassment, and anxiety.

47.     The Defendants' long-standing refusal to make their place of public accommodation fully accessible was egregious, and undertaken with reckless disregard to Plaintiff's rights under the Administrative Code.

48.     By failing to comply with the law in effect for decades, the Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome and not desired as patrons of their place of public accommodation.

49.     By refusing to make the place of public accommodation accessible, the Defendants have unlawfully profited from their discriminatory conduct by receiving revenues from unlawful space and then pocketing monies they should have lawfully used to make the place of public accommodation fully accessible.  The unlawful profits plus interest must be disgorged.

50.     Plaintiff has suffered damages in the amount of at least $2,000.00 (TWO THOUSAND DOLLARS) and the total amount shall be determined at trial.

### FOURTH CLAIM FOR RELIEF
(Violations of New York State Civil Rights Laws)

51.     Plaintiff realleges and incorporates by this reference all allegations set in this Complaint as if fully set forth herein.

52.     The Defendants have discriminated against plaintiff pursuant to the Executive Law.

53.     Consequently, Plaintiff is entitled to recover the penalty prescribed by Civil Rights Law §§ 40-c and 40-d, in the amount of $500 for each and every barrier and violation.

54.     Notice of the Defendants' violations and this action has been served upon the Attorney General as required by Civil Rights Law § 40-d.

### INJUNCTIVE RELIEF

55.     Plaintiff will continue to experience unlawful discrimination as a result of the Defendants' failure to comply with the above-mentioned laws. Therefore, injunctive relief is necessary to order the Defendants to alter and modify their place of public accommodation and their policies, practices and procedures.

56.     Injunctive relief is also necessary to make the Restaurant readily accessible to and usable by Plaintiff in accordance with the above-mentioned laws, in part, by compelling

14

Defendants to remove the raised cement or ramp the entrance, making the toilet room ADA compliant and installing ADA compliant tables.

## DECLARATORY RELIEF

57.     Plaintiff is entitled to a declaratory judgment concerning each of the accessibility violations committed by the Defendants against Plaintiff as to the policies, practices, procedures, facilities, goods and services.

## ATTORNEY'S FEES, EXPENSES AND COSTS

58.     In order to enforce Plaintiff's rights against the Defendants, Plaintiff has retained counsel and is entitled to recover attorney's fees, expenses and costs pursuant to the ADA and the Administrative Code. 42 U.S.C. §12205; 28 C.F.R. §36.505; and Administrative Code § 8-502.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter a judgment against the Defendants, in favor of Plaintiff, containing the following relief:

A.     Enter declaratory judgment declaring that the Defendants have violated the ADA and implementing regulations, Executive Law and Administrative Code and declaring the rights of Plaintiff as to the Defendants' place of public accommodation, and its policies, practices and procedures

B.     Issue a permanent injunction ordering the Defendants to remove all violations of the ADA, the Executive Law and Administrative Code, including but limited to the violations set forth above;

C.     Retain jurisdiction over the Defendants until the Court is satisfied that the Defendants' unlawful practices, acts and omissions no longer exist and will not reoccur;

D.     Award at least $2,000.00 (TWO THOUSAND DOLLARS) to Plaintiff as compensatory damages, plus pre-judgment interest, as a result of the Defendants'

15

violations of the New York State Executive Law and the Administrative Code of the City of New York;

       E.      Award at least $2,000.00 (TWO THOUSAND DOLLARS) to Plaintiff in order to punish and deter the Defendants for their violations of the Administrative Code of the City of New York;

       F.      Award Plaintiff $500.00 (FIVE HUNDRED DOLLARS) for each and every barrier and violation of the law pursuant to New York State Civil Rights Law§§ 40-c and 40-d;

       G.      Pursuant to New York State Civil Rights Law § 40-d, find the Defendants guilty of a class A misdemeanor for violating New York State Civil Rights Law;

       H.      Award reasonable attorneys' fees, costs and expenses pursuant to the Administrative Code;

       I.      Find that Plaintiff is a prevailing party in this litigation and award reasonable attorney fees, costs and expenses pursuant to the ADA; and

       J.      For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: February 9, 2016

                                                     Donald J. Weiss, Esq. (7619)
Attorney for Plaintiff
747 Third Avenue, Suite 1101
New York, New York 10017
(212) 967-4440

EXHIBIT A










Bathroom Pics (BR entrance included):






